**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **NANCY CAMPANA,** | ) | **CASE NO.1:12CV106** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THINGS REMEMBERED, INC.** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter comes before the Court on Defendant Things Remembered, Inc.'s

(hereinafter "Defendant") Motion (ECF DKT # 9) for Judgment on the Pleadings on the Basis of

Judicial Estoppel.  Defendant asserts that Plaintiff Nancy Campana (hereinafter "Plaintiff") is

precluded from bringing an adverse employment action against Defendant because Plaintiff

allegedly asserted that she had no claims against Defendant in her Chapter 13 bankruptcy

proceedings.  Plaintiff does not contest her obligation to disclose her current causes of action to

the bankruptcy court, which is currently presiding over her Chapter 13 bankruptcy; but she

maintains that she had no knowledge of her potential causes of action at the time she submitted

1

her sworn testimonies to the bankruptcy court; that any failure to disclose her causes of action was not in bad faith, and that she has subsequently rectified any failure to disclose.  Defendant's Motion should be granted, in part, and denied, in part.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  *Plaintiff's Work Environment*

The relevant facts and procedural history are as follows.  Plaintiff worked for Things Remembered as an Assistant Manager in its Beachwood, Ohio store from March 2007 through April 2010.  On April 20, 2007, Plaintiff was diagnosed with breast cancer, a diagnosis of which Defendant was aware.  Plaintiff's only option for treatment at the time of her diagnosis was a double mastectomy with reconstructive surgery, which she underwent on August 8, 2007.

Following Plaintiff's surgeries, she took three months of Family Medical Leave Act ("FMLA") leave to recover.  On or about November 4, 2007, Plaintiff returned to her position as a full-time Assistant Manager without restrictions.

Upon returning, Plaintiff continued to struggle with her health.  She underwent twenty-eight radiation treatments, and in July 2008, Plaintiff was informed she required revision surgery. Following that surgery, Plaintiff was out of work for three weeks on paid disability leave. Although her doctors felt she needed a second revision surgery in October of 2008, Plaintiff rescheduled that surgery for March 6, 2009, to aide the store during the holiday season.  After Plaintiff fully recovered from her March 6, 2009 surgery, she returned to work on April 27, 2009, full-time, without restrictions.

Within one week of Plaintiff's return to work, she strained herself and an incision in her stomach was damaged, so she scheduled an appointment with her doctor.  During a phone call in

which Plaintiff informed Defendant's Human Resources Department, Plaintiff was told she should not be at work because she was "a liability."  During the May 7, 2009 appointment, Plaintiff's physician informed her that she would need to be off work another four to five weeks in order for the stomach damage to fully heal.  Upon informing Defendant of the doctor's diagnosis, Plaintiff was once again told she was a "liability" and that she should not be working.

Despite the physician's diagnosis on May 7, 2009, and her conversation with Human Resources, Plaintiff was scheduled to work on May 9, 10, and 11, 2009.  Defendant Noelle Baxter (hereinafter "Baxter"), Plaintiff's supervisor, did not offer to take Plaintiff off the schedule despite being aware of her condition.  Plaintiff worked on May 9, 10, and 11, 2009, because, in Plaintiff's own words, "she could not be taken off the schedule."  Although Plaintiff offered to work part-time between May 12 and June 1, 2009, Defendant told her that she could not work until she was fully healed.

On June 1, Plaintiff received clearance to work on a full-time basis from her physician. Despite being able to work a full-time schedule, Defendants Things Remembered and Baxter refused to schedule Plaintiff for more than 30 hours a week.  The 30 hours mark is significant because an employee at Things Remembered needs to maintain 30 hours a week to maintain his or her health benefits.  On July 17, Plaintiff was informed by Defendant's corporate headquarters that her employment status had changed from full-time to part-time due to her inability to maintain 30 hours a week, and that she would no longer be receiving health benefits.  According to Plaintiff's Complaint, she was continuously treated disparately by the Defendants from this point forward, including, but not limited to: being scheduled for and working full-time hours and receiving no benefits, being required to bring a doctor's note in for shifts she missed where other

3

similarly situated employees were not required to do so, and being discriminated against in favor of an employee with less seniority.

Notably, Plaintiff contacted her bankruptcy attorney, Chuck Van Ness, on July 17, 2009. It was on this date that Plaintiff felt she was being discriminated against for her FMLA leaves and due to her disability.  She reached out to Mr. Van Ness to discuss her situation, but was told by Mr. Van Ness that she needed to contact an employment law attorney to "help her with her case."

On September 10, 2009, Plaintiff filed a formal charge of disability discrimination with the Cleveland District Office of the Equal Employment Opportunity Commission.  At the same time, Plaintiff's attorney, Jonathan Agin, wrote Things Remembered's Risk Management Department to inform them that he was investigating claims of disability discrimination.  On October 8, Things Remembered's Benefits Department called Plaintiff to inform her that her health benefits had been reinstated and that those hours were taken away by mistake.

Despite Defendant reinstating Plaintiff's health benefits, Plaintiff continued to be treated disparately by her employer.  She was eventually terminated on April 16, 2010, for an alleged incident where Plaintiff cost Things Remembered a pen sale due to, allegedly, giving a customer the wrong information.

### B. *Plaintiff's Bankruptcy*

On March 26, 2009, Plaintiff filed a Voluntary petition for bankruptcy, pursuant to Chapter 13 of the Bankruptcy Code.  Following her voluntary petition, Plaintiff filed a proposed Chapter 13 plan on April 27, 2009, and an amended Chapter 13 plan on May 22, 2009.  Her Chapter 13 bankruptcy petition was approved on August 13, 2009.  Plaintiff did not list her

causes of action against Defendants in her bankruptcy estate plan.  She did not update her

Bankruptcy plan to reflect her lawsuit against Things Remembered and Baxter until April 30,

2012, which she did in response to Defendant's Motion to Dismiss on the Pleadings.

## II.  LAW AND ANALYSIS

### A.  Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure states, "[a]fter the pleadings are

closed- but early enough not to delay trial- a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  "For purposes of a motion for judgment on the pleadings, all well-pleaded

material allegations of the pleadings of the opposing party must be taken as true, and the motion

may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v.*

*Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)(quoting *JPMorgan Chase*

*Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  "A motion brought pursuant to 12(c)

is appropriately granted 'when no material issue of fact exists and the party making the motion is

entitled to judgment as a matter of law." *Id.*  To survive dismissal, Plaintiff "must allege facts

that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and

must state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 554,

555 (2007).

### B.  Plaintiff's Claims are Barred by the Doctrine of Judicial Estoppel

Section 521(1) of the Bankruptcy Code requires a debtor to file a schedule of assets and

liabilities. 11 U.S.C. § 521(1).  It is well-settled that a cause of action is an asset that must be

scheduled under § 521(1).  *See Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th

Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001).  Moreover, "the duty of

disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)(quoting *Youngblood Group v. Lufkin Fed. Savings & Loan Ass'n*, 932 F.Supp 859, 867 (E.D. Tex. 1996)).  "The disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003).

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002).

The Supreme Court has noted that "the circumstances under which judicial estoppel may be appropriately invoked are probably not reducible to any general formulation or principle." *New Hampshire*, 532 U.S. at 750.  The Sixth Circuit, in *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), announced a three-prong test to determine whether a plaintiff's lawsuit is barred by judicial estoppel when that plaintiff failed to claim such lawsuits in their bankruptcy proceedings.  The test is stated as follows:

> [T]o support a finding of judicial estoppel, we must find that: (1) [the plaintiff-debtor] assumed a position that was contrary to the one that [he] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the] omission did not result from mistake or inadvertence.  In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) he lacked knowledge of the factual basis of the undisclosed claims; (2) [he had a motive for concealment; and (3) the evidence indicates an absence of bad faith.

617 F.3d at 478.

With respect to bad faith, the court noted that "even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if [he] does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional." *Id.* at 477.

In the present case, the first two prongs are easily met.  Until earlier this year, the Plaintiff's position in the bankruptcy proceedings was that she did not have any pending lawsuits.  Her recent apprisal of those claims to the bankruptcy court is of no consequence to the first prong.  The second prong is met because the bankruptcy court approved Plaintiff's plan, and has continued to administer Plaintiff's Chapter 13 bankruptcy plan, with no notice or knowledge of Plaintiff's lawsuit against Defendants.

Plaintiff argues that she had no knowledge of her claims against Defendants at the time she made her sworn testimonies to the Bankruptcy Court.  Defendants do not challenge this assertion, nor should they be required to do so.  Plaintiff's reliance on the date she gave her sworn testimonies is misplaced.  As previously stated, the plaintiff-debtor in a Chapter 13 bankruptcy has a continuing duty to disclose all potential causes of action.  *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420 (6th Cir. 2005).  As early as July 17, 2009, Plaintiff contacted her bankruptcy attorney to inquire about a potential cause of action she thought she had against Defendants.  Plaintiff's Complaint refers explicitly to disparate treatment occurring in June of 2009.  Plaintiff's bankruptcy plan did not get approved until August 13, 2009.  "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation to suggest that it may have a possible cause

7

of action, then that is a 'known' cause of action that must be disclosed." *Gaskins v. Thousand Trails*, 521 F.Supp.2d 693 (S.D. Ohio 2007); *See also Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx 420 (6th Cir. 2005) ("[I]n confirming Lewis's Chapter 13 plan, the bankruptcy court adopted Lewis's statement that she had no potential causes of action."); *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988) ("[W]hen a bankruptcy court-which must protect the interests of all creditors-approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position.")

Plaintiff had nearly a month before the confirmation of her plan to comply with her duty to reveal any and all potential causes of action to the bankruptcy court before the plan was confirmed.  She not only failed to notify the court before the plan was confirmed, but also failed to disclose to the court the causes of action after the plan was confirmed, as is required by 11 U.S.C. § 521(1).

The third prong, requiring that the omission did not result from mistake or inadvertence, is also met here.  Plaintiff cannot say that she lacked knowledge of the factual basis of the undisclosed claims.  She called a lawyer regarding those claims as early as July 17, 2009, nearly a month before the bankruptcy plan was confirmed.  Plaintiff would very clearly have a motive to conceal her lawsuit against Defendants from the bankruptcy court, as she would be able to keep all of the proceeds from the judgment or settlement to herself.

The third factor in determining whether Plaintiff's omission was due to mistake or inadvertence is whether her actions exhibited an absence of bad faith. *White*, 617 F.3d 472; *See also Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 895 (6th Cir. 2004) (The court "considers

8

reasons of mistake and inadvertence, as well as an absence of bad faith, in determining judicial estoppel...").  Defendants point to the fact that Plaintiff had, for nearly three years, despite being represented by a bankruptcy attorney and two employment law firms, filing two EEOC claims, and filing this lawsuit, failed to disclose her potential causes of action to the bankruptcy court until Defendants filed this Motion.  Likewise, there is no evidence showing that Plaintiff informed anyone other than her own lawyers, and made no attempt to reveal her lawsuit to the bankruptcy court.  Her EEOC complaint was filed within a month after her bankruptcy plan was confirmed, tending to show that she may have been waiting to file until the plan was confirmed.

Plaintiff attempts to combat this by arguing that she made numerous attempts through her counsel to advise the court of her claim.  She points to *Eubanks* as support for her arguments. However, the plaintiff in *Eubanks* was far more active in attempting to notify the bankruptcy court.  In *Eubanks*, the plaintiff's counsel and the bankruptcy trustee were in constant contact and were both aware of the cause of action.  Plaintiff even went so far as to request a court conference to determine whether the Trustee would carry out her claim.  Here, there is no evidence of any communication with the Trustee or the bankruptcy court of any kind.  Plaintiff's efforts fall far short of sufficient, and, thus, her argument to the contrary fails.

Plaintiff also attempts to argue that she relied on the advice of her attorney that she did not need to update her bankruptcy petition.  However, it is well settled Sixth Circuit law that Plaintiffs are bound by the errors of his or her attorney.  *Lewis*, 141 Fed.Appx. at 427, 428. Plaintiff's argument is meritless.

However, with regard to Plaintiff's claim for retaliatory discrimination under Ohio Revised Code § 4112.02(I), Defendant's Motion to Dismiss must be denied.  R.C. § 4112.02(I)

9

prevents any employer from "discrimin[ating] in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing..." R.C. § 4112.02(I).  The facts concerning this cause of action did not arise until after the confirmation of Plaintiff's bankruptcy plan.  Plaintiff's plan was confirmed on August 13, 2009.  Things Remembered was not aware of any action Plaintiff had taken against them until September 10, 2009.  Any alleged discrimination in retaliation to Plaintiff's EEOC claim or hiring a lawyer must have happened after the confirmation of the bankruptcy plan, so Plaintiff still maintains this cause of action.

Plaintiff may attempt to argue that her claim for violation of FMLA should survive the Motion for Judgment on the Pleadings because the final time she was discriminated against due to exercising her rights under the Family Medical Leave Act was August 16, 2010, which was well after the bankruptcy.  However, that date is also well after she was terminated from Things Remembered.  In addition, her Complaint makes no mention of the date August 16, 2010.

Even assuming that 2010 was a typographical error, and that she was referring to August 16, 2009, which would place her three days after the bankruptcy confirmation, Plaintiff states no plausible fact that would show she was entitled to such a cause of action on this date.  August 16, 2009, is not mentioned anywhere in the Complaint, and all facts plead in the Complaint around that date deal with being retaliated against for filing an EEOC charge.  Plaintiff's EEOC charge, filed in early September, 2009, for "disability discrimination," her lawyer investigating "disability discrimination," and Plaintiff's stated belief that she felt her health benefits would never have been returned to her had it not been for filing the EEOC claim, each make no mention

10

of FMLA leave, or could plausibly relate to such a claim.  Rather, these facts allude to a state-law claim for retaliatory discharge, and the Court declines to exercise its supplemental jurisdiction over this sole remaining claim.

### III.  CONCLUSION

Defendant's Motion for Judgment on the Pleadings is granted with regard to all claims under federal law.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim and remands case to Cuyahoga County Court of Common Pleas for further proceedings.

IT IS SO ORDERED.


s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  January 24, 2013

11